IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PAUL DEAN BRADFORD, #1021530 | § | |
| VS. | § | CIVIL ACTION NO. 6:04cv565 |
| KEN KUYKENDALL, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Paul Dean Bradford, an inmate confined at the Coffield Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed this civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned pursuant to 28 U.S.C. § 636(c).

The original complaint was filed on December 17, 2004. The Plaintiff complained about the treatment he has received at the Coffield Unit in conjunction with preexisting problems associated with an old broken left ankle. He broke his ankle before he went to prison. He had surgery before he went to prison, which included the use of a plate and screws. But he has lingering problems with the ankle, and his complaint is about how the Defendants dealt with the problems.

After reviewing the complaint, the Court decided to conduct an evidentiary hearing, consistent with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted on June 23, 2005. Regional Grievance Supervisor Chip Satterwhite and Nurse Thomas Maciel attended the hearing to answer any questions the Court may have concerning the Plaintiff's security or medical records. Only sworn testimony and authenticated records were accepted during the *Spears* hearing, and the evidence submitted by prison personnel was considered

1

by the Court only to the extent that it does not contradict the inherently plausible and credible evidence offered by the plaintiff. *Vernado v. Collins*, 920 F.2d 320, 321 (5th Cir. 1991).

The Plaintiff testified that the problems with his left ankle were recognized before he arrived at the Coffield Unit. His medical restrictions for work and housing ("HSM-18") included job restrictions involving limited standing, no climbing, no walking on wet uneven surfaces and no work around machines with moving parts. His housing assignment included a low bunk restriction, but there were no restrictions regarding row assignment. The Plaintiff testified that he arrived at the Coffield Unit in May, 2003. He was not sure which day. Classification records reveals that he arrived on May 8, 2003.

Dr. Kuykendall examined him on May 13, 2003. Dr. Kuykendall initially kept the same restrictions. The Plaintiff testified that he was having problems with the ankle hardware, and Dr. Kuykendall referred him to the Orthopedic Department for this problem. Dr. Kuykendall also referred him to the Brace and Limb Clinic for special medical shoes. Medical records reveal that the shoes were issued to him on November 25, 2003.

The Plaintiff testified that he met with an Orthopedic doctor by Telemed on September 11, 2003. The plan was to remove the ankle hardware. The doctor told him about the potential problems that could occur. The Plaintiff testified that he became concerned about the potential problems, particularly about the prospect of losing his leg. He asked to speak with a psychiatric counselor about the problems, and the operation was cancelled. The Plaintiff testified that he has talked to the counselor. He also testified that he realized that he needed the surgery, thus he asked to have it rescheduled. As of today, he still has not had the surgery.

In May, 2004, the Plaintiff submitted a sick call request about the surgery and his desire for a new pair of boots. The Plaintiff testified that medical shoes are often stolen by other inmates. He also did not want to wear out his current boots. The Plaintiff testified that he saw Dr. Kuykendall on May 20, 2004. Dr. Kuykendall asked him what he wanted him to do for him. The Plaintiff explained that he wanted surgery on his left ankle and a new pair of boots. Dr. Kuykendall did not honor his requests. The Plaintiff complained that Dr. Kuykendall lifted his restrictions as a result of the meeting. He was assigned to a hoe squad because the restrictions were lifted. He noted that he could get a disciplinary case if he refused to work in the fields. He worked there one day, and he experienced extreme pain in his left ankle. He submitted a sick call request, which led Dr. Orig to reinstate the restrictions. He was then assigned to a medical hoe squad. His job duties on that job includes activities such as shelling peas and cleaning windows.

The Plaintiff testified that he is suing Dr. Kuykendall as a result of his actions in May, 2004. He sued Warden Westfall, Warden Moore, Warden Sizemore and Coffield Medical Practice Manager John Eaton because he filed grievances and asked for their help and received none.

Nurse Thomas Maciel testified under oath from the Plaintiff's medical records. He noted that the problem with the surgery was that John Sealy Hospital cancelled many surgeries and required a new referral.

The Plaintiff gave the Court permission to review his prison records, including his medical records. The medical records document that Dr. Kuykendall met with the Plaintiff soon after his arrival at the Coffield Unit on May 13, 2003. Dr. Kuykendall noted that the Plaintiff told him that the surgery on his ankle occurred in 1996. The Plaintiff discussed his problems with the ankle. Dr. Kuykendall referred the Plaintiff to the Brace and Limb Clinic for medical boots and to an

orthopedic surgeon for a consult. He also prescribed Ibuprofen. The Plaintiff met with Dr. Longo, an orthopedic surgeon, on September 11, 2003. Dr. Longo specified that the plan was to remove the hardware in the Plaintiff's left ankle. The operation was cancelled when the Plaintiff asked for psychological counseling. There are extensive records about the Plaintiff receiving counseling. The Brace and Limb Clinic examined the Plaintiff on October 30, 2003. Medical boots were ordered, which were delivered on November 25, 2003.

On May 9, 2004, the Plaintiff submitted a sick call request about his ankle. He was initially seen by Nurse Dickens on May 14, 2004. She scheduled him for a doctor's appointment for a referral to the orthopedic department for surgery. Dr. Kuykendall examined him on May 20, 2004. He referred the Plaintiff to the orthopedic department for surgery, although he noted that the Plaintiff signed a refusal of treatment form when offered surgery the previous time. The Plaintiff told him that he was now willing to undergo the surgery. Dr. Kuykendall noted that the Plaintiff received the medical boots on November 25, 2003, and that the Plaintiff was not eligible for another pair at that time. Subsequent records reveal that he was not eligible for another pair until November 25, 2004. Finally, Dr. Kuykendall had the work restrictions removed.

On June 17, 2004, the Plaintiff was examined after he complained that he twisted his ankle jumping off of a wagaon. P. A. Berger noted erythema and mild edema in the left ankle. She concluded that he had a left ankle sprain. The Plaintiff was given a cell pass for two weeks, a cane for two weeks and an ACE wrap. X-rays were taken of the Plaintiff's left ankle. The radiologist noted the plate and screws and characterized them as well healed. He did not observe any new problems. Dr. Orig examined the Plaintiff on July 7, 2004. He concluded that the Plaintiff had sprained his right ankle and had painful left ankle hardware. He placed the old restrictions back on

4

the Plaintiff's HSM-18 for 90 days. Dr. Orig noted that the Plaintiff was scheduled for an appointment with the orthopedic doctor on October 14, 2004. New X-rays were taken of the Plaintiff's left ankle on October 11, 2004. It was noted that there were no recent fractures or acute bone pathology. The soft tissue was within normal limits. The appointment with the orthopedic doctor on October 14, 2004, was cancelled because the doctor was unavailable.

On October 18, 2004, Dr. Kuykendall denied a referral to the Brace and Limb Clinic for a new pair of medical boots. He noted that the Plaintiff could resubmit his request after November 25, 2004, which was one year after he received the previous pair. It was noted that the Plaintiff stated that he had thrown away the old pair because they were worn out. On January 7, 2005, Dr. Orig extended the work restrictions for another ninety days. On January 11, 2005, the Plaintiff was examined by P. A. Berger about his ankle. She postponed a decision about referring him to the Brace and Limb Clinic until after he saw the orthopedic surgeon. She noted an orthopedic appointment was scheduled for January 14, 2005. On January 14, 2005, the appointment was cancelled by Utilization Review for an unknown reason. On January 18, 2005, P. A. Berger asked whether the appointment had been rescheduled. She was told that they were awaiting a reschedule date. Dr. Orig sent in a request to rescheduled the appointment on March 11, 2005. The medical records ended at that time.

The Plaintiff testified that his primary complaint was against Dr. Kuykendall. Deliberate indifference to a prisoner's serious medical needs constitutes an Eighth Amendment violation and states a cause of action under 42 U.S.C. § 1983. *Estelle v. Gamble*, 429 U.S. 97, 105-07 (1976); *Jackson v. Cain*, 864 F.2d 1235, 1244 (5th Cir. 1989). In *Farmer v. Brennan*, 511 U.S. 825, 835 (1994), the Supreme Court noted that deliberate indifference involves more than just mere

5

negligence. The Court concluded that "a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. *See also Reeves v. Collins*, 27 F.3d 174, 175 (5th Cir. 1994).

In *Domino v. Texas Department of Criminal Justice*, the Fifth Circuit discussed the high standard involved in showing deliberate indifference as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by medical personnel does not suffice to state a claim for deliberate indifference. *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Id.* Furthermore the decision whether to provide additional treatment "is a classic example of a matter for medical judgment." *Estelle*, 429 U.S. at 107. And, the "failure to alleviate a significant risk that [the official] should have perceived, but did not" is insufficient to show deliberate indifference. *Farmer*, 511 U.S. at 838.

239 F.3d 752, 756 (5th Cir. 2001).

In the present case, Dr. Kuykendall was clearly receptive to the Plaintiff's medical needs about his left ankle when he initially met with him on May 13, 2003. Dr. Kuykendall referred him to the Brace and Limb Clinic for medical boots, which he received, and to an orthopedic surgeon, who scheduled him for ankle surgery to remove the hardware. The Plaintiff's ankle hardware was not removed solely because he backed out of the surgery and signed a refusal of treatment form. On May 20, 2004, Dr. Kuykendall referred him once more to an orthopedic surgeon. It was premature for the Plaintiff to receive a new pair of medical boots. He is eligible to receive only one pair of boots a year. He is not entitled to multiple pairs or a pair more than once a year. Overall, the records clearly reveal that Dr. Kuykendall was receptive to his needs and provided medical care as deemed

appropriate. The Plaintiff complained that Dr. Kuykendall lifted his medical restrictions, but his disagreement with the medical decision does not provide a basis for a civil rights lawsuit. *Estelle v. Gamble*, 429 U.S. at 106; *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). It is noted that Dr. Orig placed the medical restrictions back on the Plaintiff's HSM-18, but only after he sprained his left ankle by falling off of a wagon and only on a temporary basis. The X-rays did not reveal any new problems with his ankle. His complaint is essentially about pain that is commonly associated with ankle hardware. The facts as alleged and developed do not support an inference that Dr. Kuykendall or anyone else has been deliberately indifferent to the Plaintiff's serious medical needs.

The Court would note that it appears that the Plaintiff would have better success if he timely submits requests for medical boots and submits new requests about the status of his referral to the orthopedic surgeon. Nonetheless, the Court does not have any factual basis for concluding that Dr. Kuykendall was deliberately indifferent.

The Plaintiff sued the remaining Defendants because they did not grant his grievances or otherwise provide help with his requests. It is noted that none of them are doctors. None of them were in a position to overrule Dr. Kuykendall's medical decisions. But the claims against these Defendants should be denied for a more basic reason. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process

violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005).  Congress established the exhaustion requirement to give prison officials the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures.

In conclusion, the Court is of the opinion that the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact.  The case should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1).  It is accordingly

**ORDERED** that the cause of action is **DISMISSED** with prejudice pursuant to 28 U.S.C. § 1915A(b)(1).  All motions by either party not previously ruled on are hereby **DENIED**.

So **ORDERED** and **SIGNED** this **24** day of **June, 2005.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE